# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| OTIS L. HENRY | § | |
| | § | Civil Action No. 4:17-CV-00313 |
| v. | § | Judge Mazzant |
| | § | |
| CITY OF SHERMAN, TEXAS | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant City of Sherman, Texas's ("the City") Motion to Disqualify Plaintiff's Attorneys (Dkt. #25) and Motion to Stay Proceedings (Dkt. #18). Having reviewed the motions and the relevant pleadings, the Court finds the motions should be denied.

## BACKGROUND

Plaintiff Otis L. Henry ("Henry") sued the City alleging violations of the Age Discrimination in Employment Act of 1967. Ronald R. Huff and Robert E. Richardson of the Richardson Law Firm represent Henry in this action ("Plaintiff's Attorneys"). Wayne Blackwell ("Blackwell"), an employee of the City since 2000 and in the Human Resources Department since 2005, is also represented by Plaintiff's Attorneys in a separate action in which Blackwell makes an Equal Employment Opportunity Commission ("EEOC") complaint. While Blackwell was working in the City's Human Resources Department, Henry was notified on December 6, 2016, that he was terminated with an effective termination date of January 1, 2017. Even though Blackwell was in the Human Resources Department at the time, Blackwell discovered that the City dismissed Henry after it happened. Blackwell was not part of the decision-making process to fire Henry and was intentionally made ignorant of the events that took place.

After Henry was fired, Blackwell called Henry to find out what happened. After that call, Blackwell looked at Zach Flores's computer. Zach Flores was the Human Resources Manager and

was involved in the investigation that led to Henry's termination. Blackwell informed Henry, before January 1, 2017, that after he checked Flores's computer he could not find anything regarding the investigation.

The City recently discovered that Blackwell forwarded an email to Plaintiff's Attorneys on September 28, 2017 regarding the City's restriction of his access to personnel records. The City also observed Blackwell shredding unidentified documents. The City placed Blackwell on administrative leave on October 19, 2017. After placed on leave, an employee of the City went to get Blackwell's phone and tablet, and observed that Blackwell wiped the devices. The City filed the present motions to stay and disqualify Plaintiff's Attorneys (Dkt. #18; Dkt. #25). Henry filed a response to both motions (Dkt. #27; Dkt. #28). The City filed its replies (Dkt. #29; Dkt. #30) and Henry filed a sur-reply to the motion to disqualify (Dkt. #31).

## LEGAL STANDARD

The Fifth Circuit has "made clear that 'disqualification cases are governed by state and national ethical standards adopted by the court.'" *FDIC v .U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311–12 (5th Cir. 1995) (quoting *In re Am. Airlines, Inc.*, 972 F.3d 605, 610 (5th Cir. 1992)). In the Fifth Circuit, when considering disqualification of an attorney, district courts generally rely upon the following: (1) the local rules in the district; (2) American Bar Association's ("ABA") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *Ayus v. Total Renal Care, Inc.*, 48 F. Supp. 2d 714, 714 (S.D. Tex. 1999). Beyond the various rules and codes identified above, "[a] court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen

counsel." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976) (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973)).

In the Eastern District, "the standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." Eastern District of Texas, Local Rule AT-2. In Texas, disqualification is a "severe remedy." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a "dilatory trial tactic." *Id.*

## ANALYSIS

The City argues that Plaintiff's Attorneys should be disqualified because: (1) Plaintiff's Attorneys have violated the "No Contact Rule" by engaging in ex parte communication; and (2) Plaintiff's Attorneys' representation of Blackwell creates an appearance of impropriety. Henry responds that there is no violation and, even if a violation occurred, there is no prejudice.

### I.   Ex Parte Communication

The City argues that Plaintiff's Attorneys violated the "No Contact Rule," Texas Disciplinary Rule of Professional Conduct 4.02 and ABA Model Rule 4.2, by communicating with Blackwell. The City maintains that Blackwell is one of the people who should not be contacted under the rules because he was the Human Resources Director and had managerial authority, and his actions could be imputed to the City for civil liability. Henry maintains that Plaintiff's Attorneys are permitted to contact Blackwell under the Texas and ABA Model Rules of Professional Conduct.

Texas Rule of Professional Conduct 4.02 states that while a lawyer is representing a client, "a lawyer shall not communicate . . . with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding the subject." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. 10, §9). "This prohibition extends to certain 'persons *presently* having managerial responsibility' in the organization [that relates to the subject of the representation] or '*presently* employed by' the organization" and can make the organization liable for the matter at issue. *In re RSR Corp.*, 473 S.W.3d 775, 781 (Tex. 2015) (emphasis in original) (quoting TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a)).[1] However, a lawyer is allowed to contact "a person presently employed by [an organization or entity of a government] whose conduct is not a matter at issue but who might possess knowledge concerning the matter at issue." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a) cmt 4.

The Court is not persuaded that Blackwell is an employee that falls under the "No Contact Rule" in this case. The City contends that Blackwell has managerial authority because Zach Flores, the Human Resources Manager, was Blackwell's subordinate; however, Flores's own statements at his deposition belie this proposition. At his deposition, Flores maintained that he was not Blackwell's subordinate.[2] The City presented no other argument that suggest Blackwell has managerial authority. Additionally, the City contends that Blackwell's actions could be imputed on the City for civil liability; however, from the present record Blackwell was not involved in Henry's termination and his actions, or lack thereof, in Henry's dismissal could not

---

[1] Additionally, the ABA Model Rules have a similar rule that extends the prohibition to the constituents of an organization that "has authority to obligate the organization with respect to the matter" or whose actions "may be imputed to the organization for purposes of civil or criminal liability." MODEL RULES OF PROF'L CONDUCT r. 4.2 cmt. 7.

[2] This is based on the representation of Henry. Henry has requested the deposition transcripts and has offered to supplement the record once Henry receives the transcripts.

4

result in civil liability. It does not appear from the record that anything Blackwell did during the events could be imputed to the City to result in civil liability. However, Blackwell is an employee on administrative leave whose conduct is not at issue, but that has knowledge, although limited, of the events surrounding the subject matter of the suit. Accordingly, Plaintiff's Attorneys were permitted to contact Blackwell pursuant to the rules. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a); MODEL RULES OF PROF'L CONDUCT r. 4.2; *In re RSR Corp.*, 475 S.W.3d at 781.

Further, the City asserts that Plaintiff's Attorneys communicated with Blackwell as evidenced by: (1) Blackwell's EEOC charge, which states that he "was actively cooperating in the investigation of the incident by [Plaintiff's Attorneys]"; (2) Henry's Original Complaint, which maintains Blackwell was not aware of any internal investigation into Henry; (3) emails forwarded by Blackwell to Plaintiff's Attorneys;[3] (4) Blackwell's destruction of the City's information; and (5) an email forwarded by Blackwell to his personal email account regarding the subject matter of another employment lawsuit. Henry argues that the City cannot show any discussions between Plaintiff's Attorneys and Blackwell actually regard the subject matter of the suit as required by the professional rules of conduct. Moreover, Henry asserts that the City cannot show any prejudice as a result of the communications between Plaintiff's Attorneys and Blackwell because the City has not shown one piece of confidential information that was sent to Plaintiff's Attorneys.

---

[3] When an attorney receives privileged information through no fault of its own, courts can consider several factors in determining whether the attorney should be disqualified: "1) whether the attorney knew or should have known that the material was privileged; 2) the promptness with which the attorney notifies the opposing side that he or she has received its privileged information; 3) the extent to which the attorney reviews and digests the privileged information; 4) the significance of the privileged information; i.e., the extent to which its disclosure may prejudice the movant's claim or defense, and the extent to which return of the documents will mitigate that prejudice; 5) the extent to which the movant may be at fault for the unauthorized disclosure; 6) the extent to which the nonmovant will suffer prejudice from the disqualification of his or her attorney." *In re Meador*, 968 S.W.2d 346, 351–52 (Tex. 1998). Here, the Court does not find that Plaintiff's Attorneys received any privileged information, so it does not need to engage in a discussion of these factors.

5

The "No Contact Rule" prevents attorneys litigating a suit from contacting a person or organization that the lawyer knows is represented *about the subject matter of the representation.* *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 4.02(a); MODEL RULES OF PROF'L CONDUCT r. 4.2. Additionally, the Court "should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification." *In re Meador*, 968 S.W.2d at 350 (citing TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.08 cmt. 10); *Orchestratehr, Inc. v. Trombetta*, No. 3:13-cv-2110-KS-BH, 2016 WL 4563348, at *14 (N.D. Tex. Sept. 1, 2016).

The Court finds that the City has not shown any prejudice, or that any communication that took place regarded the subject matter of the suit. The Court will address each piece of evidence that the City suggests prove Plaintiff's Attorneys have improperly communicated with Blackwell that resulted in prejudice.

First, as to Blackwell's cooperation[4] with the investigation, the City has not provided any evidence of what this cooperation means. From the information provided to the Court, Blackwell's cooperation appears to have taken place before the litigation process began, and involved Blackwell looking at a coworker's computer and communicating to Henry that no formal investigation was launched on his employment before the City terminated him. The City has not presented any evidence that Blackwell shared this information with Plaintiff's Attorneys. The evidence before the Court demonstrates that the Blackwell shared the information with Henry, prior to Henry or Blackwell hiring Plaintiff's Attorneys.

Although the City did not present any additional evidence of cooperation that Blackwell engaged in, any additional cooperation Blackwell could provide would not be prejudicial. At the time of Henry's termination, Blackwell had no information on the nature of the firing, the

---

[4] The City takes issue with what Blackwell characterizes as active cooperation with the investigation, but the Court will not engage in argument about semantics, and will only address the evidence before it.

investigation that led to Henry's dismissal, or the reasons for his termination. Indeed, City Manager Robby Hefton stated in his deposition that Blackwell was deliberately kept ignorant of the investigation and termination of Henry.[5] Blackwell did not possess any confidential information regarding the termination, and his knowledge of the matter was extremely limited. Accordingly, there is no evidence that Blackwell's statement that he is cooperating with the investigation results in any prejudice.

Second, Henry's Original Complaint contains information that Henry received from a discussion with Blackwell before he filed suit, as opposed to from Blackwell divulging confidential information to Plaintiff's Attorneys, as the City claims. The information contained in Henry's Original Complaint does not suggest that Blackwell communicated with Plaintiff's Attorneys, and as such does not prejudice the City.

Third, the email chain that Blackwell forwarded to Plaintiff's Attorneys was forwarded based on the fact that Blackwell believed the City's conduct in preventing him from seeing personnel records was a misdemeanor, evidenced by the body of the email from Blackwell. (Dkt. #25, Exhibit 4 at p. 1).[6] Further, the content of the email chain does not contain any information regarding this case. (*See generally* Dkt. #25, Exhibit 4). The discussion is about Blackwell's access to personnel information and his job responsibilities. This communication does not present any prejudice to the City to form a basis to disqualify Plaintiff's Attorneys.

Fourth, any information that the City observed Blackwell destroying does not suggest that any confidential information was given to Plaintiff's Attorneys. Because Blackwell was

---

[5] This is based on the representation of Henry. Henry has requested the deposition transcripts and has offered to supplement the record once Henry receives the transcripts.
[6] Blackwell is allowed to forward information under the Texas Whistle Blower Act, if he believes that the conduct is criminal. *See Davis v. Ector Cty., Tex.*, 40 F.3d 777, 785–86 (5th Cir. 1994) (citing *Castaneda v. Tex. Dep't of Agric.*, 81 S.W.2d 501, 503 (Tex. App.—Corpus Christi 1992, writ denied)).

purposefully left out of the discussion on Henry's dismissal, the likelihood that Blackwell destroyed confidential or privileged information regarding the subject matter of this case is relatively low. Even if Blackwell did destroy confidential information, the documents that were shredded could not then be shared with Plaintiff's Attorneys. As such, there is no evidence that Blackwell sent any of this information that was shredded or deleted to Plaintiff's Attorney or that it caused the City any prejudice.

Finally, the fact that Blackwell forwarded a subsequent email regarding another case, to his personal email account does not show that the City is prejudiced in this suit. First, the email contains information regarding another case. Moreover, there is no evidence that Blackwell forwarded this email from his personal email address to Plaintiff's Attorneys. Accordingly, there is no evidence that any communication happened here, and if it did, there is no evidence that the communication was about the subject matter of the suit or that it caused the City any prejudice.

The City has not presented any evidence to suggest that there is any improper communication between Plaintiff's Attorneys and Blackwell that resulted in prejudice to the City, such that the severe remedy of disqualification is warranted.

## II.     Appearance of Impropriety

The City maintains that "[a] court must disqualify a lawyer for appearance of impropriety when there is a **reasonable possibility** that some specifically identifiable impropriety has occurred and the likelihood of public suspicion of the impropriety is sufficiently strong enough to outweigh the interest of the party being represented by counsel of its choice." (Dkt. #25 at p. 4 (citing *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1265 (5th Cir. 1983)). The City contends that Plaintiff's Attorneys' representation of Blackwell gives them an excuse to have ex parte communication with Blackwell. The City avers that because Blackwell worked in the Human

Resources Department that he had access to confidential information regarding the present case, and asserts that Blackwell is sharing that information with Plaintiff's Attorneys.[7] Therefore, the City asserts that there is much more than a reasonable possibility that there is impropriety in this case. The City argues that it is prejudiced because of this disclosure of confidential information.

Henry responds that there is no appearance of impropriety by Plaintiff's Attorneys' representation of Blackwell in a separate matter because Blackwell does not currently have and never had confidential information regarding this case. Henry maintains that even if there were an appearance of impropriety, the City would have to show prejudice and because Blackwell has no confidential information the City cannot show such prejudice.

"Canon 9 of the Code of Professional Responsibility provides: 'A Lawyer Should Avoid Even the Appearance of Professional Impropriety.'" *McCuin*, 714 F.2d at 1265. Because this is a canon of professional responsibility, it is not a mandate, but an attorney may still be disqualified on this principle if it violates the prescription. *Id.* In order to determine if an attorney's conduct gives the appearance of impropriety, the Court should engage in a two-step inquiry. *Id.* "First, the district court should inquire whether there is 'at least a reasonable possibility that some specifically identifiable impropriety' has occurred.'" *Id.* (citing *Woods*, 537 F.2d at 813). "Second, the [C]ourt should consider whether the likelihood of public suspicion of, or obloquy regarding, such an impropriety is sufficiently strong to outweigh the interest of the party being represented by counsel of its choice." *Id.* (citing *Woods*, 537 F.2d at 813).

---

[7] The City points to Blackwell's EEOC charge, which states that he is actively cooperating in the investigation of Henry's incident by Plaintiff's Attorneys and Henry's Original Complaint, which contains information regarding Blackwell's involvement, or lack thereof, in the dismissal of Henry. Additionally, the City describes the email Blackwell forwarded to Plaintiff's Attorneys, Blackwell's shredding of documents, and an email that Blackwell forwarded to his personal email address, perhaps to share the emails with Plaintiff's Attorneys. The Court previously addressed these allegations and will not address them again.

The Court already determined that there is no improper ex parte communication and that there is no evidence that Blackwell shared any confidential information with Plaintiff's Attorneys. As such, this allegation does not serve as a basis for the proposition that impropriety has occurred.

The other basis that the City asserts creates the appearance of impropriety is the dual representation. The City maintains that there does not need to be proof of actual confidential information disclosed because a presumption of impropriety can exist with dual representation. (Dkt. #25 at p. 7) (citing *Hull v. Celanese*, 513 F.2d 568, 572 (2d Cir. 1975)). The City asserts that representing an employee of the defendant, who was privy to discussions regarding the subject matter of the case, and was in a key position during the time at issue in the suit produces this presumption of impropriety. The City contends that the dual representation gives Plaintiff's Attorneys access to confidential information that it would not have access to if there were no dual representation, and given Blackwell's suspicious behavior, that access is more likely.

Henry responds that this is not a case that warrants a presumption of impropriety because Blackwell is merely a fact witness in this case, and he did not have access to any confidential information surrounding the termination of Henry, the subject matter of the case.

As previously mentioned, attorneys are permitted to talk to employees of an organization that is represented by a lawyer, if that employee's conduct is not at issue in the representation and that employee has information regarding the subject matter of the suit. *See* TEX. DISCIPLINARY RULES PROF'L CONDUCT 4.02; *In re RSR Corp.*, 475 S.W.3d at 781. While the representation of some employees may present the appearance of impropriety, these employees will have to have access to confidential information regarding the subject matter of the suit. For example, in *Hull*, the Second Circuit disqualified a law firm that sued a corporation for a Title VII violation when that corporation's in-house counsel, who initially worked on the Title VII case, intervened in the

lawsuit. *Hull*, 513 F.2d at 569–70. The Court determined that because it was reasonable that the in-house counsel acquired information on the subject matter of the suit, the representation, on its own without any evidence that confidential information was actually shared, was enough to create the appearance of impropriety. *Id.* at 571–72.

The facts of the *Hull* case are entirely distinguishable from the case at bar. Blackwell is a fact witness to the case because he was not involved in the decision-making process behind Henry's termination, and was in fact deliberately kept ignorant of the investigation and termination of Henry. Blackwell does not reasonably have any information regarding the subject matter of the suit. *See id.* The City has not presented any evidence that Blackwell possesses any privileged information that would be beneficial to the present dispute. *See id.*; *Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1366 (5th Cir. 2010). Accordingly, the Court finds that there is no appearance of impropriety, and the Court does not need to move to the second step of the analysis.

### III. Motion to Stay

The City requested the Court to:

> stay the proceedings to allow the City to discover the nature and extent of Blackwell's communication with [Plaintiff's Attorneys] and to see if Blackwell deleted or gave opposing counsel information pertinent to the case, to move to disqualify opposing counsel and, even more importantly, to complete the pending review of Blackwell's emails (both from his City of Sherman account and his personal Google account) to see if other information pertinent to trial in this case has been deleted or shared with Plaintiff's Attorneys.

(Dkt. #18 at p. 8). The City has had the opportunity to do everything requested in its motion, and as such the Court finds the request is moot.

11

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Disqualify Plaintiff's Attorneys (Dkt. #25) is hereby **DENIED**, and Defendant's Motion to Stay Proceedings (Dkt. #18) is **DENIED as moot**.

SIGNED this 8th day of December, 2017.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE